1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **EASTERN DISTRICT OF CALIFORNIA**

10

11 IRENE PIRSILLA CAMARENA,                **Case No. 1:15-cv-1461 GSA**

12               Plaintiff,                **ORDER REGARDING PLAINTIFF'S**
                                           **SOCIAL SECURITY COMPLAINT**
13       v.

14 CAROLYN W. COLVIN, Acting
   Commissioner of Social Security
15
               Defendant.
16
## I.     INTRODUCTION
17
          Plaintiff Irene Camarena ("Plaintiff") seeks judicial review of a final decision by the
18
   Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for
19
   supplemental security income ("SSI") pursuant to XVI of the Social Security Act.  The matter is
20
   currently before the Court on the parties' briefs which were submitted without oral argument to
21
   the Honorable Gary S. Austin, United States Magistrate Judge.[1]  Upon a review of the entire
22
   record, the Court finds the ALJ's decision is proper and is supported by substantial evidence in
23
   the record as a whole. Accordingly, this Court affirms the agency's determination to deny
24
   benefits and denies Plaintiff's appeal.
25
## II.    BACKGROUND AND PRIOR PROCEEDINGS[2]
26
          On December 22, 2011, Plaintiff filed an application for SSI alleging disability beginning
27

28
---
[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 7 and  8).
[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

on November 16, 2010. AR 20; 169-175.  The applications were denied initially on May 10, 2012, and on reconsideration on November 16, 2012.  AR 20; 111-115; 119-123.  Plaintiff filed a request for a hearing and Administrative Law Judge ("ALJ") Ross Wheatley held a hearing on January 13, 2014. AR 34-72.  On February 28, 2014, the ALJ issued an unfavorable decision determining that Plaintiff was not disabled. AR 19-29.  Plaintiff filed an appeal of this decision with the Appeals Council.  The Appeals Council denied the appeal rendering the ALJ's order the final decision of the Commissioner. AR 1-8.

Plaintiff now challenges that decision arguing that the ALJ incorrectly rejected Plaintiff's testimony and found her not credible.  Defendant argues that the ALJ properly discounted Plaintiff's testimony and his credibility analysis is supported by substantial evidence.

**A.  Relevant Hearing Testimony**

Plaintiff was 50 years old at the time of the hearing. AR 40.  She did not graduate from high school and received an eleventh grade education. AR 41.  Subsequently, Plaintiff got a certificate in medical office administration, but was unable to obtain a job. AR 41. Plaintiff last worked at Costco part-time doing demonstrations. AR 42. She stopped working in 2011 because of pain in her legs and feet. AR 42.

Plaintiff's fibromyalgia has the biggest impact  on  her  life.  AR 43.  She experiences stabbing and burning pain in her joints. AR 43. Medication helps sometimes, but leaves her feeling tired. AR 43. Plaintiff went to the doctor in October 2013 for cortisone shots in her knees, but it only exacerbated her pain. AR 43-44. Doctors also suggested physical therapy, however, Plaintiff received no relief from her pain. AR 44. Her fibromyalgia also causes pain in her hands requiring her to rest her hands repeatedly throughout the day. AR 62. She also has to lay down about six hours a day and she takes hot baths twice a day to help alleviate her symptoms. AR 46; 62.

Plaintiff testified she walks about two or three blocks twice a week in the summer. AR 44. During  these  walks  her  feet  become  painful  due  to  flat  feet.  AR 44.  Doctors recommended surgery but she does not have a date set for the procedure. AR 45.  Plaintiff also experiences neck and back pain due to arthritis. AR 47.  The pain in her neck is constant and travels down her left

arm. AR 63.

Additionally, Plaintiff suffers from post-traumatic stress syndrome, bipolar disorder, anxiety and depression, however, the depression is the most severe. AR 46. Plaintiff sees her psychiatrist about one time per month and last saw him in October 2013. AR 46. Plaintiff feels worthless and is "down" all the time. AR 46. At times she has trouble just getting out of bed due to her depression. AR 59. She also experiences nervousness around others and has had panic attacks at work. AR 59; 60.  She has had to quit four different jobs because she was not able to handle working. AR 60.  Her boyfriend also left her because he was tired of seeing her depressed. AR 60. Plaintiff has participated in individual therapy sessions and has been on several different medications. AR 46-47.  Talk therapy has helped, but her medications have not been effective. AR 46-47.  In July 2012, Plaintiff was put on a 5150 hold after expressing suicidal ideation. AR 49. She has been hospitalized five times since 2000. AR 56.

Plaintiff is able to shower and dress herself. AR 50. Plaintiff can drive short distances but currently does not drive because she cannot afford to register her car. AR 54.  In the past she would drive to doctors' appointments once or twice a month, and would drive to the grocery store every other week. AR 54. She can lift a gallon of milk, uses a microwave, reads the bible and watches television, but only for short periods. AR 50; 54; 61.  When watching TV, her mind wanders which requires her to rewind the program repeatedly.  AR 61.  Plaintiff has four grandchildren that she sees three to four times a month. AR 52. She sits on the floor and colors or plays simple board games like Candyland with them. AR 52-53. The interaction with her sister (whom she lives with) and her grandchildren are her primary social contacts. AR 53; 55.  Plaintiff testified that she does not have any other friends or participate in community activities. AR 53.

## III.    THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

. . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. § 416.920(a).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. § 416.920 (a)(4).  The ALJ must consider objective medical evidence and opinion testimony.  20 C.F.R. § 416.913.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;  (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work;  and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 416.920(a)(4).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 22, 2011, the application date. AR 21.  He identified fibromyalgia, knee pain, neck pain, low back pain, depression, anxiety and post-traumatic stress disorder ("PTSD") as severe impairments. AR 21. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 2.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to perform a full range of light work but could only occasionally climb ladders, ropes or scaffolds, couch, kneel, or crawl; could frequently balance, stoop and climb ramps and stairs; could only occasionally interact with the general public and co-workers; could only perform simple work described as SVP1 and SVP2 work with simple repetitive tasks; and could only have occasional changes in the work setting. AR 22-28.  The ALJ found that Plaintiff was not capable of

4

performing her past work but could work as a packer, a cafeteria attendant, and a laundry worker. AR 27.

## IV.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

## V.    DISCUSSION

### A.  The ALJ's Properly Discredited Plaintiff's Subjective Complaints.

Plaintiff argues that the ALJ failed to provide clear and convincing evidence for finding her testimony not credible. (Docs. 15, pgs. 7-16; Doc. 18, 1-4).  Specifically, Plaintiff contends that the ALJ improperly rejected her testimony by: (1) failing to give legally sufficient reasons to reject testimony and records regarding her mental impairments; (2) improperly relying on Plaintiff's daily activities; (3) finding that Plaintiff's condition improved with medication even though Plaintiff continued to have symptoms when on medication; and (4) relying on his own personal observations at the hearing as a basis to reject the Plaintiff's testimony.  Defendant contends that the ALJ's credibility analysis is supported by substantial evidence because he properly relied on Plaintiff's daily activities, her demeanor at the hearing, inconsistencies between Plaintiff's claims and the medical record, and the results of her treatment.  (Doc. 17, pgs. 2-9).

#### i.  *Legal standard*

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Treichler v. Comm. of Soc. Sec.*, 775 F. 3d 1090, 1098 (9th Cir. 2014). First, the

claimant must produce objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only if he or she makes specific findings and provides clear and convincing reasons for doing so. *Id.*; *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).

> An ALJ can consider a variety of factors in assessing a claimant's credibility, including:
>
> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted). Work records, physician and third party testimony about the nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct may also be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

### ii. *Analysis*

Here, the ALJ found that Plaintiff's "medically-determinable impairments can reasonably be expected to produce her alleged symptoms," but that Plaintiff's statements concerning "the intensity, persistence and limiting effects of those symptoms are not entirely credible for the reasons explained in this opinion." AR 23. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-82.

With regard to the second step, the ALJ relied on the following reasons to discredit Plaintiff: 1) that the objective medical evidence for her physical condition did not support her symptomology; 2)  the medical evidence did not support Plaintiff's severity of her mental symptoms because the health care providers relied heavily on her subjective complaints without question; 3) Plaintiff regularly engaged in various activities of daily living despite her allegations of severe pain; 4) she arrived at one of the consultative physical exams as a passenger in a small sports coupe and her ability to move, handle objects, hear, speak and travel was normal; and 5) at

the hearing, Plaintiff could move independently without any overt signs of pain and she was able to respond to questions in an appropriate manner. AR 26.

The Court finds that the ALJ's rejection of Plaintiff's testimony is supported by substantial evidence. First, the ALJ's reliance on the lack of objective medical evidence to corroborate Plaintiff's physical symptoms is a clear and convincing reason to find the Plaintiff's testimony not credible. As the ALJ noted, there were several instances when doctors' reports and assessments did not substantiate Plaintiff's physical complaints. AR 23-25.  For example, the ALJ noted that in September 2011, Plaintiff went to the Emergency Room ("ER") complaining of all over body pain, chest and arm pain. AR 24, 263-272. When she was examined, she was in no acute distress and her cardiovascular and physical examinations were normal. She was diagnosed with adjustment disorder, with mixed anxiety and depression due to situational stressors. Specifically, Plaintiff reported having no place to live and was not taking her medications. AR 24; 268-271.  A similar incident occurred in November 2012, when Plaintiff went to the ER complaining of neck, arm and chest pain. After an examination, ER staff determined that Plaintiff was in no acute distress and she was discharged. AR 25, 327, 381.

The ALJ also referenced Plaintiff's Adult Function Reports ("AFR") completed by Plaintiff in March and December 2012, numerous other records documenting Plaintiff's knee pain and difficulty walking, and her testimony at the January 2014 hearing. AR 23; 24; 213-220; 235-243. During this time, Plaintiff's complaints increased and included an inability to lift more than three pounds, problems with dressing and combing her hair, and a disabling mental condition. AR 42-43, 46-48, 56. However, as the ALJ noted, although diagnostic tests established impairments in Plaintiff's neck and knees, as well as some degenerative changes in her spine, the findings were minimal and no specific treatment recommended. AR 24; 25; 279-282; 283-285; 290; 322-323; 616-621; 625.  For example, in August 2013, Plaintiff complained of severe knee pain and was diagnosed with flat feet and tight hamstrings. She was advised to do stretching and was told that surgical options may be available if stretching did not help. AR 25; 530-531.

The ALJ also discussed Plaintiff's complaints of severe urinary problems including having to urinate over twenty-five (25) times a day.  However, when her claims were tested she

had normal urinary function and was merely provided with home exercises. AR 24; 306; 313-315. The ALJ found that these impairments did not limit Plaintiff's ability to perform work related activities consistent with her RFC. AR 23. See *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (holding that while an ALJ may not discredit a claimant's subjective testimony based solely on the objective medical evidence, objective medical evidence was still a relevant factor in determining the severity of a claimant's pain and its disabling effects).

Finally, with regard to her physical complaints, the ALJ considered the reports of two consultative physicians: Dr. Roger Wagner and Dr. S.K. Madireddi, who examined Plaintiff in 2012 and 2013, respectively.  Both doctors noted no significant limitations. AR 24-25; 319-323; 448-451. Specifically in 2012, Plaintiff complained of knee, neck and back pain, and wide spread fibromyalgia symptoms in her elbow, knees and feet.  AR 319-320. After reviewing all of the objective medical evidence and completing an examination, Dr. Wagner made unremarkable findings except for a slight reduction in the range of motion in Plaintiff's neck and back. AR 321-322.  Plaintiff's muscle strength in the upper and lower extremities was normal. AR 24; 322. Dr. Wagner assessed Plaintiff with no limitations in standing and walking or in manipulative activities, and slight restrictions in performing postural activities. AR 323.

Dr. Madireddi's examined the Plaintiff approximately a year later and came to similar conclusions. AR 448-451. Plaintiff presented with similar complaints, yet after an extensive physical examination Dr. Madireddi did not find significant physical limitations.  AR 451. Notably, it was Dr. Madireddi who reported that Plaintiff arrived as a passenger in a small sports coupe for her exam, which suggested to him a certain degree of functionality since her ability to move, handle objects, and travel appeared to be normal.  Although Plaintiff contends that arriving in a sports car does not provide information about Plaintiff's functioning level, it is instructive given Plaintiff's allegations of severe pain.  The fact that Plaintiff was able to exit, enter, and move in a smaller vehicle without issue undercuts her claims of impaired mobility because of pain. Therefore, the ALJ's reliance on these findings regarding Plaintiff's presentation at the consultative examination was proper since they are conclusions that address Plaintiff's symptomatology and were made by the examining physician. *See Thomas*, 278 F. 3d at 958-959

(the ALJ properly considered the inconsistency of medical opinions with Plaintiff's allegations).

Similarly, the ALJ's credibility findings regarding her mental impairments are also supported by the record. Plaintiff argues that the ALJ never articulated a reason to reject Plaintiff's testimony in this area. (Doc. 18, pgs. 9-11; Doc. 18, pgs. 2-3). The Court disagrees. When discussing Plaintiff's testimony regarding her mental health symptoms, the ALJ summarized both Dr. Gauch, Psy. D and Dr. Cushman's, Ph.D. consultative reports, and found that Dr. Gauch's report was more consistent with Plaintiff's activities and the medical record as a whole. AR 26-27; 326-332; 470-476. Moreover, he also noted that although Plaintiff had been hospitalized for suicidal ideation, her mental condition improved when she took medication. AR 26; 352-353; 355-357; 363. The ALJ's reliance on this factor is proper. *See*, *Warre v. Comm'r Soc. Sec.* 439 F. 3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for disability); *Matthews v. Shalala*, 10 F. 3d 678, 680 (9th Cir. 1993) (claimant's allegations of disabling symptoms not credible where claimant use of medications controls symptoms). Although Plaintiff argues that Plaintiff reported that her medication does not help her impairments, she has not cited to any references in the record to substantiate these claims. (Doc. 15, pgs. 13-14). In fact, both of her briefs are void of any reference to the medical record in support of her arguments and are therefore unpersuasive. After considering all of the evidence the ALJ properly determined that Plaintiff's mental impairments resulted in some limitations, but were consistent with her RFC for simple, unskilled work, routine repetitive tasks with only occasional changes in the work setting and occasional contact with the public and co-workers.[3] AR 22; 26; 99; 331-332.

Finally, the ALJ properly rejected Plaintiff's allegations of pain based on his observations at the hearing. He noted Plaintiff walked easily without assistance, moved her chair, and appeared to sit comfortably without any overt signs of pain. He also noted that she was able to respond to questions in an appropriate manner. AR 26. Plaintiff correctly notes that an ALJ cannot rely on his or her

---

[3] The Court notes that the ALJ also references that Plaintiff's mental health providers relied heavily on her subjective reports which he felt was unreliable. AR 26. The Court has not considered this as a valid basis to reject Plaintiff's testimony because the ALJ's comments were vague and the Court cannot create reasons that were not articulated by the ALJ. A reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citing *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)). However, since the ALJ articulated several other bases for his decision, such error is harmless. *Id*.

personal observations during a hearing as the sole basis to reject a claimant's credibility.  (Doc. 15, pgs. 14-15).  However, an ALJ can utilize ordinary credibility techniques to evaluate credibility during a hearing. *Lansford v. Astrue*, 319 Fed. Appx. 627, 628 (9th Cir. 2009) (unpublished) (when rejecting claimant's testimony regarding the alleged "extent of her pain," the ALJ properly applied "ordinary techniques of credibility evaluation" including his "observation that [claimant] was able to sit for 25 minutes during the administrative hearing despite testifying that she was incapable of sitting for longer than 15 minutes"), citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (internal quotation marks omitted); *Tonapetyan*, 242 F.3d at 1148 (ALJ's credibility determination may be based, in part, on his personal observations); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("The inclusion of the ALJ's personal observations does not render the decision improper," so long as they are supported). *Thomas*, 278 F.3d at 960 (ALJ can consider demeanor in evaluating credibility). Here, the ALJ used his personal observations of Plaintiff's condition in conjunction with other factors as a basis to discredit Plaintiff's testimony, which is permissible.

Notwithstanding the above, the Court notes that the ALJ also relied on Plaintiff's activities of daily living such as her ability to sit on the floor and play board games with her grandchildren, her ability to walk  half a mile or three to four blocks, socializing with others, and a treating physician's recommendation that she ride a stationary bike to treat her pain symptoms.  AR 26.  Plaintiff has argued reliance on this factor was improper because she did not testify inconsistently regarding her performance in these areas, and the ALJ did not discuss how these activities are transferable to a work setting.  (Doc. 15, pgs. 11-13 citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th  2007).  The Court agrees that the ALJ's analysis in this area is lacking.  However, even assuming the ALJ erred with regard to this issue, that error is harmless where the other reasons offered are proper and are supported by substantial evidence.  *See Carmickle v. Commissioner of Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson v. Comm. of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) ("So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate conclusion' such is deemed harmless and does not warrant reversal").

Given the above, the ALJ provided clear and convincing reasons to reject Plaintiff's

testimony. Here, the ALJ clearly identified what testimony he found not credible and what evidence undermined Plaintiff's complaints. *Brown-Hunter,* 806 F. 3d at 493; *Lester,* 81 F.3d at 834. It is not the role of the Court to re-determine Plaintiff's credibility de novo. If the ALJ's finding is supported by substantial evidence, the Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. Although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational, as it was here, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). Accordingly, the ALJ's credibility determination was proper.

## VI.    CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Irene Pirsilla Camarena.


IT IS SO ORDERED.

Dated:    **January 17, 2017**                          **/s/ Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE

11